*E-FILED - 11/20/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GERARDO JERRY MENCHACA, | No. C 06-2120 RMW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT L. AYERS, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner Gerardo Menchaca, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging constitutional validity of the prison disciplinary proceedings at which he was found guilty of possessing methamphetamine. In response to the order to show cause, respondent has filed an answer addressing the merits of the petition and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claim presented and will deny the petition.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Menchaca.hcruling.md.wpd

# BACKGROUND

Petitioner was found guilty of possessing methamphetamine at a San Quentin State Prison disciplinary hearing in February 2005. The charge was based on the following facts alleged by respondent. Drug paraphernalia was found near petitioner's cell and petitioner was asked, and agreed, to provide a urine sample. Ans. ¶ 4. Respondents concede that the collecting officer did not provide petitioner with gloves, and that when the officer handed petitioner the collection bottle, it was open and outside the collection bag. Id. The urine sample tested positive for methamphetamine. Id. The San Quentin pharmacist confirmed that petitioner was not on any medications that would cause his urine to test positive for methamphetamine. Id. Based on these findings, prison officials held a disciplinary hearing. Id. ¶ 2. Petitioner pled not guilty at the hearing, but made no other statement at that time.[1] Id. ¶ 3. Petitioner was found guilty of the charge, assessed a 150-day forfeiture of credits, and was ordered to be subject to a year and a day of random drug testing. Id. ¶ 5.

According to petitioner, when he was informed that drug paraphernalia was found outside his cell "on the common thoroughfare," he said that he "could not be held responsible for areas outside of his cell or person." Pet. at 1. Petitioner asserts that he gave a urine sample because the officer stated that if petitioner refused, disciplinary action would be taken and because in the near future he had to appear before the Board of Prison Terms. Id. Petitioner contends that in addition to failing to provide gloves and an unopened bottle, prison officials failed to provide an uncontaminated environment in which to collect the sample. Id. Petitioner also claims that he was not allowed to seal the bottle or watch the officer label and secure the sample. Id. at 2.

The parties agree to the following facts. After the disciplinary hearing verdict, petitioner filed a prison administrative appeal, which prison officials later denied. Petitioner appealed this denial to the Inmate Appeals Branch, which "screened out" the appeal as untimely. Petitioner filed a state habeas petition in the Marin County Superior Court, which found that petitioner had not

---

[1]. At the disciplinary hearing, petitioner did ask questions of the officer who took the sample. See Pet., Exs. Petitioner did not number the pages in his exhibits.

United States District Court
For the Northern District of California

1 demonstrated that the alleged errors at the disciplinary hearing amounted to a violation of his due
2 process rights. Petitioner also filed habeas petitions, later denied, in the state appellate and supreme
3 courts. Petitioner filed the instant action in 2006.

4     As grounds for federal habeas relief, petitioner alleges that his state and federal due process
5 rights were violated when San Quentin State Prison officials failed to follow their own regulations
6 and guidelines: illegally obtaining a urine test; failing to provide a certified urinalysis testing
7 officer to perform the test; failing to secure an uncontaminated area when issuing the test; and
8 failing to follow the procedures concerning disciplinary hearing due process safeguards and
9 regulations. Order to Show Cause ("OSC") at 2-3. Petitioner seeks relief in his request that all
10 reports and findings in his disciplinary hearing be excluded from future use and expunged from his
11 California Department of Corrections and Rehabilitation file. See Pet. at 6.

## STANDARD OF REVIEW

13     A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a
14 person in custody pursuant to the judgment of a State court only on the ground that he is in
15 custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §
16 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the
17 merits in state court unless the state court's adjudication of the claim "resulted in a decision that
18 was contrary to, or involved an unreasonable application of, clearly established Federal law, as
19 determined by the Supreme Court of the United States." Id. § 2254(d)(1).

20     "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court
21 arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if
22 the state court decides a case differently than [the Supreme] Court has on a set of materially
23 indistinguishable facts." Williams v. (Terry) Taylor, 529 U.S. 362, 412-13 (2000). "Under the
24 'unreasonable application clause,' a federal habeas court may grant the writ if the state court
25 identifies the correct governing legal principle from [the Supreme] Court's decisions but
26 unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

27     A federal habeas court may also grant the writ if it concludes that the state court's
28 adjudication of the claim "resulted in a decision that was based on an unreasonable determination

1  of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254
2  (d)(2). The court must presume correct any determination of a factual issue made by a state court
3  unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28
4  U.S.C. §2254(e)(1).

5    The state court decision to which 2254(d) applies is the "last reasoned decision" of the
6  state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d
7  1085, 1091-92 (9th Cir. 2005). Where the state court gives no reasoned explanation of its decision
8  on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review
9  of the record is the only means of deciding whether the state court's decision was objectively
10 reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with
11 such a decision, a federal court should conduct "an independent review of the record" to determine
12 whether the state court's decision was an unreasonable application of clearly established federal
13 law. Id.

14   If constitutional error is found, habeas relief is warranted only if the error had a
15 "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v.
16 Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

## DISCUSSION

18   Petitioner alleges that his state and federal due process rights were violated when San
19 Quentin State Prison officials failed to follow their own regulations and guidelines: illegally
20 obtaining a urine test; failing to provide a certified urinalysis testing officer to perform the test;
21 failing to secure an uncontaminated area when issuing the test; and failing to follow the procedures
22 concerning disciplinary hearing due process safeguards and regulations. OSC at 2-3.

23   At prison disciplinary proceedings, prisoners retain their right to due process subject to the
24 restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539,
25 556 (1974). Thus, although prison disciplinary proceedings are not part of a criminal prosecution
26 and the full panoply of rights due a defendant in such proceedings does not apply, where serious
27 rules violations are alleged, state statutes or regulations restrict the power of prison officials to
28 impose the sanctions, and the sanctions are severe, the Due Process Clause requires certain

minimum procedural protections. See id. at 556-57, 571-72 n.19. Wolff established five constitutionally-mandated procedures for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

Petitioner's claims are without merit. First, petitioner has not shown that prison officials failed to accord him the minimal procedural requirements mandated by Wolff. Indeed, petitioner does not dispute respondent's assertion that petitioner was given advance written notice of the claimed violation, time to prepare for the hearing, a written statement detailing the evidence relied on and the disciplinary action taken, and an opportunity to call witnesses and present documentary evidence. Nor has petitioner alleged that he needed and was denied aid from a fellow inmate or prison staff person.

Second, petitioner's specific allegations that San Quentin officials failed to follow their own guidelines is without merit. A prison official's failure to meet the prison's own guidelines does not, without more, constitute a denial of due process. Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989). Petitioner's assertion that "because the sample collection process was irreversibly compromised, the lab results cannot rise to the standard of reliable evidence" is insufficient. Though the procedures were not followed, petitioner points to no evidence that the sample was

compromised. Without more, the court cannot say that petitioner has shown a violation of his constitutional rights. Also, petitioner had the opportunity at the disciplinary hearing to raise the issue that the integrity of the sample may have been compromised.

Also, it is not clear that prison officials violated the prison's stated procedures. Petitioner appended to his petition a California Department of Corrections Operations Manual chapter that states the rules for collecting an inmate's urine sample. See Pet., Exs. One rule states that "[t]he specimen bottle cap must be tightly secured to seal the bottle and prevent leakage." The following rule states that "[t]he specimen bottle must contain the authorized label." Neither of these rules – nor do any others in the chapter – directs, contrary to petitioner's assertion, that the inmate must be allowed to observe the sealing or labelling of the sample bottle. Also, respondents assert that the prison chapel bathroom, where the sample was collected, "is one of the sites designated for the collection of samples," which runs counter to petitioner's assertion that an improper collection area was used.[2] Based on all these considerations, petitioner's claims based on the prison's failure to provide a certified urinalysis testing officer to perform the test, to secure an uncontaminated area when issuing the test, and to follow the procedures concerning disciplinary hearing due process safeguards and regulations, will be denied.

Third, petitioner's claim fails on the merits. See Thompson v. Souza, 111 F.3d 694, 699, 701 n. 4 (9th Cir. 1997). The Ninth Circuit has held, however, that the Fourth Amendment right to be secure against unreasonable searches extends to incarcerated prisoners, although the reasonableness of a particular search must be determined by reference to the prison context. See Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1998). The court should "consider the reasonableness of [the search] to help [the court] determine if it was reasonably related to legitimate penological interests." Thompson, 111 F.3d at 700. Subjecting prisoners to urine tests can be reasonably related to prison officials' legitimate penological interest in keeping drugs out of prison. See id. The prisoner "bears the burden of showing that [prison] officials intentionally

---

3. At the disciplinary hearing, an officer, in response to a question asked by petitioner, testified that he "stopped an inmate from going into the restroom area where [petitioner] was being tested." See Pet., Exs.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Menchaca.hcruling.md.wpd    6

used exaggerated or excessive means to enforce security." Michenfelder, 860 F.3d at 333.

The court concludes that, under the circumstances presented here, obtaining and testing petitioner's urine was reasonably related to San Quentin's legitimate penological interest in combating drug use. Prison officials allegedly found drug paraphernalia outside petitioner's cell, an assertion petitioner does not dispute. If such evidence existed, this provided a reason to investigate possible drug use by petitioner, which could include a urine test and, if use was established, disciplinary action. Based on this, petitioner has not shown that the taking and testing of his urine was not reasonably related to a legitimate penological interest. Petitioner also has not shown that prison officials intentionally used exaggerated or excessive means to enforce this security goal.

Also, though petitioner's claims are based on alleged procedural, rather than substantive, constitutional violations, the court will address the constitutional validity of the disciplinary board's finding. The requirements of due process are met if there is "some evidence" to support a decision by a prison disciplinary board. Superintendent v. Hill, 472 U.S. 445, 455 (1985). In the instant case, the disciplinary board's decision was supported by some evidence in the form of the testimony of prison officials and the results of petitioner's urine sample analysis report.

Accordingly, the court finds that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254 (d)(1), (2).

## CONCLUSION

The court finds that petitioner has failed to show any violation of his federal constitutional rights in the underlying state proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 11/17/08

RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.06\Menchaca120.hcruling.md     7